UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JERONE STAPLES,<br>Defendant. | Case No. 2:23-cr-00201-APG-EJY<br>**REPORT AND RECOMMENDATION**<br>**Re: Renewed Motion to Suppress (ECF No. 176)** |

Pending before the Court is Defendant Jerone Staples' Renewed Motion to Suppress. ECF No. 176. The Court reviewed the Motion, the Government's Response (ECF No. 178), and Defendant's Reply (ECF No. 182).

**I. Brief Background and Summary**

Defendant was arrested on August 29, 2023, and subsequently charged by indictment with Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(8). ECF No. 1. Defendant filed a Motion to Suppress (ECF No. 34) that was denied when the Order Adopting the Report and Recommendation and Overruling Staples' Objection was entered on July 1, 2025. ECF No. 73. Defendant's jury trial commenced on January 26, 2026. ECF No. 145. On January 30, 2026, the jury was found deadlocked, and the Court declared a mistrial. ECF No. 154.

Defendant renews his Motion to Suppress ("Renewed Motion") arguing new facts presented during his trial demonstrate the Court's prior order "relied on misrepresented and inaccurate information." ECF No. 176 at 2. The Court does not summarize Defendant's contentions here but addresses each argument as it is considered below. The Court incorporates the factual background of this case as stated in detail in its December 4, 2024 Report and Recommendation. ECF No. 49.

Defendant's Renewed Motion asks the Court to review what he argues are "new facts" that undermine the search warrant issued for a residence on Hitching Rail Drive in Las Vegas, Nevada ("Hitching Rail") and, once considered, require the "suppression of all evidence obtained from any search warrant … [obtained] in this case." ECF No. 176 at 2. Defendant also seeks a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The Government responds that there are no new facts or

grounds supporting Defendant's Renewed Motion and nothing presented supports a *Franks* hearing. ECF No. 178.[1]

## II. Discussion

### a. Defendant's Standing to Challenge the Hitching Rail Warrant.

Although Defendant does not address standing in his moving papers, the Court begins with this threshold issue as "analysis cannot proceed … without its establishment." *United States v. Rivera-Baltazar*, Case No. CR-10-1245-TUC-JMR(HCE), 2010 WL 4977647, at *4 (D. Ariz. Nov. 2, 2010) (internal citation omitted). There is no dispute that a defendant moving to suppress must establish his legitimate expectation of privacy in the searched location—thus, his standing to bring a motion to suppress.[2] *Id*. (citing *United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993). *See also United States. v. Sneed*, 732 F.2d 886, 888 (9th Cir. 1984). The Defendant "is not 'entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing.'" *United States v. Long*, 301 F.3d 1095, 1100 (9th Cir. 2002) (quoting *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995); *Rivera-Baltazar*, 2010 WL 4977647, at *4 ("A defendant cannot by mere pleading alone require the government to go forward with evidence to dispel his claim to standing. Thus, a defendant cannot rely upon the government's lack of such evidence 'to discharge his allotted burden of proof, nor may a court overlook a defendant's failure to carry that burden.'") (quoting *Singleton*, 987 F.2d at 1449). *See also United States v. Cody*, 434 F.Supp.2d 157, 167 (S.D.N.Y. 2006) ("a district court may not grant a defendant standing to pursue a suppression motion 'relying solely on the government's theory of the case,' because to do so would amount to 'an evisceration of the defendant's burden of proof as established by the Supreme Court'") (quoting *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005), further quoting *Singleton*, 987 F.2d at 1449).

---

[1] Defendant's Reply is found at ECF No. 182. It was read and considered by the Court.

[2] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV

However, "the government may not take contradictory positions in order to defeat an asserted expectation of privacy." *Long*, 301 F.3d at 1100 (citing *United States v. Bagley*, 772 F.2d 482, 489 (9th Cir. 1985). Still, a prosecutor does not make inconsistent arguments when he or she charges a defendant with possession of a seized item while also arguing that such individual lacks standing because the defendant's Fourth Amendment privacy interest was not violated in the course of a search. *United States v. Coverson*, Case No. 3:9-CR-00075-TMB-DMS, 2011 WL 1044632, at *3 (D. Alaska March 22, 2011) (citing *Zermeno*, 66 F.2d at 1061, and *Singleton*, 987 F.3d at 1062). "To demonstrate a legitimate expectation of privacy … [a defendant] must show that he or she has a subjective expectation of privacy in the area searched that society is prepared to recognize as objectively reasonable." *Id*. (citing, *inter alia*, *Smith v. Maryland*, 442 U.S. 735, 740 (1979) and *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007).

Unfortunately, the parties' assertions of fact and proffered arguments regarding standing leave much to be desired. As stated, Defendant's Renewed Motion does not mention standing. ECF No. 176. In his Reply, Defendant erroneously contends the Government raises the issue of standing for the first time in its Opposition to the Renewed Motion. ECF No. 182 at 3, *but compare* ECF No. 39 at 5-6. Defendant's single conclusory sentence that the Government currently takes contradictory positions regarding Defendant's standing is also unpersuasive. ECF No. 182 at 3:21-22. Defendant likens this case to *Bagley*; however, the Court finds *Bagley* distinguishable.

In *Bagley*, the defendant offered an alibi defense at trial that he was neither the owner nor possessor of a car that was searched; while the Government "asserted, and convinced the jury, that Bagley was the driver of the automobile." 772 F.2d at 489. For the first time on appeal, the Government argued that Bagley had no legitimate expectation of privacy. The Ninth Circuit "reject[ed] the [G]overnment's argument that Bagley's trial strategy vitiate[d] … his expectation of privacy in the automobile." *Id*. The Ninth Circuit further held that "[a] mere offer of proof by the defendant … does not establish the fact of ownership or possession." *Id*. The Court concluded because "the jury implicitly found that Bagley was in possession of the getaway car on the day of the robbery, … Bagley has a legitimate expectation of privacy in the car." *Id*.

Here, Defendant does not identify an offer of proof that he was a resident or overnight guest at the Hitching Rail address. ECF Nos. 176, *generally*; 182 at 4-5. Defendant does not cite any documentary or testimonial evidence to support his conclusion that he was an overnight guest. *Id*. The jury did not implicitly find Defendant was an overnight guest as there was no jury verdict reached. ECF No. 154. Moreover, Defendant offered witnesses who testified he did not reside at Hitching Rail, and the testimony reviewed by the Court does not establish he was an overnight guest on August 28, 2023—the night before his arrest and search. ECF No. 165 at 62-63, 83, 92, 96-104, 138-139. Thus, while Defendant correctly asserts "overnight guests also have standing to challenge the search of a home," his conclusion that he "was an overnight guest" because he frequently visited the Hitching Rail address (taking care of the owner's dog and dealing with landscaping) is unsupported. ECF Nos. 182 at 4-5 (caselaw citations omitted); 165 at 102-03.

In contrast to all of the above, the Court does not ignore that the Government's Opposition states Defendant "was residing at Hitching Rail at the time the warrant was executed." ECF No. 187 at 10. Further, the Government argued at trial that it knew Hitching Rail was Defendant's residence and asserted it was Defendant who was arguing the contrary. ECF No. 163 (Transcript, day 2 of the jury trial) at 33-34.

After careful consideration regarding whether to hold a hearing to flesh out the issue of Defendant's standing, the Court concludes the logical and efficient way forward is to accept, for purposes of deciding the instant Renewed Motion, that Defendant could establish he was an overnight guest at Hitching Rail on August 28, 2023, he had permission of the owner to stay overnight at the address and, therefore, he has standing for purposes of pursuing his renewed request to suppress evidence.

b. Defendant's Renewed Attacks on the Hitching Rail Warrant and Request for a *Franks* Hearing.

As explained in detail by the Court in its recommendation to deny Defendant's original Motion to Suppress:

> A misrepresentation in an affidavit constitutes a violation of the Fourth Amendment if the misrepresentation is material. *Franks*, 438 U.S. at 171-72. Misrepresentations may be in the form of an omission or affirmative representation.

> Affirmative representations are material only if there is no probable cause absent consideration of the misrepresented fact. *Id*. A misrepresentation based on an omission is material only where the omitted facts "cast doubt on the existence of probable cause." *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992) (internal quotation marks omitted). A defendant is entitled to an evidentiary hearing on the validity of an affidavit underlying a search warrant if the defendant makes a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *United States v. Stanert*, 762 F.2d 775, 780-81 (9th Cir. 1985), *amended by*, 769 F.2d 1410 (9th Cir. 1985). "What is needed is direct evidence of the affiant's state of mind or else circumstantial evidence of a subjective intent to deceive." *United States v. Woodfork*, 999 F.3d 511, 518 (7th Cir. 2021); *accord United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019). "Recklessness requires that the affiant have a high degree of awareness that the affiant's statement is probably false." *United States v. Taylor*, Case No. 2:18-cr-00321-JAD-NJK, 2019 WL 3365838, at *4 (D. Nev. July 25, 2019) (citing *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1988)), *report and recommendation adopted in part*, 2019 WL 5190880 (D. Nev. Oct. 15, 2019).

ECF No. 49 at 9.

The Fourth Amendment entitles a defendant to a hearing under *Franks* for purposes of challenging the validity of a search warrant affidavit when the defendant makes a substantial preliminary showing that a false statement was deliberately or recklessly included in the search warrant affidavit and that the statement was necessary to the judge's finding of probable cause. *United States v. Napier*, 436 F.3d 1133, 1139 (9th Cir. 2006) (citing *Franks*, 438 U.S. at 155-56).[3] With the above standards in mind, the Court addresses each of Defendant's arguments below.

*1. The 2019 Firearm Offense.*

Las Vegas Metropolitan Police Department ("LVMPD") Detective Dinh (hereinafter "Dinh") stated in his affidavit in support of the Hitching Rail search warrant that, based on his review of a criminal records check, Defendant had a felony conviction from 2019. ECF No. 34-3 at 4. The affidavit was submitted and issued on August 29, 2023 (ECF No. 34-3 at 18). Approximately 17 months later, Defendant produced evidence that the 2019 felony was dismissed. ECF 57-2 filed on February 7, 2025. The Court had this evidence before it when considering Defendant's objection to

[3] "Probable cause exists when, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) *citing Illinois v. Gates*, 462 U.S. 213, 238 (1983) (an affidavit establishes probable cause for the issuance of a warrant where it presents a "fair probability that contraband or evidence of a crime will be found in a particular place."). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question. Neither certainty nor a preponderance of the evidence is required." *United States v. Kelley*, 482 F.3d 1047, 1050-51 (9th Cir. 2007) (internal quotation marks and citations omitted).

the recommendation that Defendant's original Motion to Suppress be denied. ECF No. 73 at 4. And, despite this information, the Court adopted the recommendation to deny the Motion to Suppress. *Id.* at 12. As the Court found then, and confirms now, Defendant offers nothing demonstrating Dinh had any knowledge, let alone a high degree of awareness that his statement regarding the 2019 conviction was false. ECF No. 175 at 5. Defendant offers no evidence that Dinh had an intent to deceive the state court when his affidavit in support of the search warrant was submitted. *Id.*, *generally*. The warrant sought, among other things, firearms as Defendant—a convicted felon—was not permitted to own or possess guns. ECF No. 34-3 at 16. Given the undisputed evidence that Defendant had a 2011 felony conviction for robbery, Defendant's argument fails to demonstrate that had information regarding the 2019 conviction been omitted from the affidavit presented to the state judge, that judge would have concluded LVMPD lacked probable cause to seek the warrant it did.

In sum, neither the inclusion of the 2019 event as a felony conviction nor its removal were material to the determination of probable cause because there is no dispute that Defendant was a convicted felon. *United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019) (noting that "materiality" means "necessary to finding probable cause") (citing *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). Finally, the Court notes that even assuming Dinh was negligent in failing to find the dismissal, this is insufficient to establish a misrepresentation warranting a *Franks* hearing. *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987) ("Mere negligence in 'checking or recording the facts relevant to a probable-cause determination' is not sufficient to warrant a *Franks* hearing.") (quoting *Franks*, 438 U.S. at 170) (citing *United States v. Brooklier*, 685 F.2d 1208, 1221 (9th Cir. 1982)).

*2. Defendant's Social Media Post Appearing to Show a Fireman.*

Defendant takes issue with Dinh's representation regarding a picture and description of that picture provided to the state judge in support of the Hitching Rail search warrant. The statement in Dinh's affidavit does not represent a certainty that the picture displays a real gun; rather, Dinh states Defendant "posted a video of himself driving and what *appeared* to be a butt of a firearm protruding from his right front pant pocket." ECF No. 34-3 at 6 (emphasis added). Defendant argues that at trial "testifying officer[s] admitted that it is impossible to tell if a firearm is real or fake based off a

photo alone." ECF No. 176 at 3. Defendant says the Court "assumed" his original Motion to Suppress offered only the "mere possibility" that the gun was fake and the officers' trial testimony "increases the likelihood" that the gun was fake "beyond" that conclusion. *Id*.

In *District of Columbia v. Wesby*, the Supreme Court found law enforcement "does not need to rule out a suspect's innocent explanation for suspicious facts" to obtain probable cause for a search warrant. 583 U.S. 48, 61 (2018). *Accord United States v. Stenger*, 605 F.3d 492, 504 (8th Cir. 2010) ("[t]he mere possibility that the weapon could have been fake does not preclude a reasonable jury from finding that the gun was real; the government is not required to disprove the theoretical possibility that the defendant carried only a sophisticated toy") (internal citation omitted). Defendant argues that post trial the standard established in *Wesby* no longer applies because when "innocent explanations" are inherently or circumstantially implausible they may be disregarded. ECF No. 176 at 4 *citing Wesby*, 538 U.S. at 67-68. First, *Wesby* addressed circumstances involving law enforcement's encounter with someone breaking the law who, at the time, offered an explanation for behavior that is implausible. *Id*. at 67 ("officers are not required to take a suspect's innocent explanation at face value"). Second, as *Wesby* makes clear, "innocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect." *Id*. at 68.

Here, Defendant does not offer an innocent explanation, only an alternative to the conclusion reached by the state judge. But, at the risk of redundancy, the judge reviewing the affidavit was entitled to use his common sense and draw reasonable inferences to form his opinion whether probable cause existed to search for guns based on the totality of the information provided. *Gates*, 462 U.S. at 230; *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1983) (Poole, concurring). As stated in *United States v. Ventresca*, 380 U.S. 102, 108 (1965), "[i]f the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, … must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." The *Gates* Court confirms that the judge to whom an affidavit is presented is free to draw "reasonable inferences ... from the material supplied to him by applicants for a warrant."

*Id*. at 240. Neither "certainty nor a preponderance of the evidence is required" to make a probable cause finding. *Kelley,* 482 F.3d at 1050.

Defendant's argument fails to show that the characterization of the July 17, 2023 picture posted to his Instagram account (ECF No. 34-3 at 6) as appearing to show the butt of a gun sticking out of his pants should have been discarded as circumstantially implausible based on an innocent explanation. That conclusion is unsupported by the arguments and applicable law on which Defendant relies.

*3. Defendant's Statements Regarding Possessing and Shooting Firearms*.

As explained in the Court's original Report and Recommendation, there is no dispute that Defendant contacted an LVMPD undercover vice officer ("UC") in September 2022 through an Instagram account with username "paytime515." ECF Nos. 34 at 1-2; 34-3 at 4. At that time, Dinh opened an investigation into whether Defendant was attempting to establish himself as a pimp in Las Vegas. *Id*., and 34-3 at 6. Dinh suspended the original investigation from September 2022 to August 2023 due to a lack of communication between the UC and Defendant. ECF No. 34-3 at 6. In August 2023, the UC posted a story to the UC's Instagram account to which Defendant responded stating: "TapN hoe fr." *Id*. This prompted Dinh to reopen his investigation "to determine" if Defendant "was actively recruiting" women into prostitution. *Id*.

The August 2023 affidavit submitted by Dinh in support of the Hitching Rail search warrant states that on August 19, 2023, the UC and Defendant exchanged "several direct messages" ultimately leading to an in-person meeting at a Grimaldi's Pizza restaurant ("Grimaldi's"). ECF No. 34-3 at 7. Dinh further provides that at the Grimaldi's meeting, Defendant: (1) told the UC he was worried about meeting the UC because Defendant thought the UC was with the police; (2) admitted his friends were arrested and charged with pandering; (3) explained Vice tactics used to catch individuals involved in the prostitution lifestyle; (4) explained he has other prostitutes working for him whose pictures he displayed while assuring the UC there would be no drama among the prostitutes; (5) told the UC he goes to the range to shoot his guns; and (6) explained to the UC that the UC would turn all of the UC's earnings to Defendant and Defendant would take care of the UC

buying the UC everything the UC needed including jewelry to represent his "stable" (defined by Dinh as including "all the prostitutes working from the same pimp."). *Id*. at 8-9.

Defendant argues Dinh's affidavit "neglected to inform the [state] court of two false statements" he made to the UC. ECF No. 176 at 4. According to Defendant, these omissions "could undermine the veracity of other claims" Defendant made to the UC. *Id*. Specifically, Defendant states he told the UC he had a concealed carry permit (a "CCW"), which Dinh had to know was false because Defendant is a convicted felon. *Id*. at 4-5. Defendant further argues he "indicated to the UC that he always carries a firearm on his person, but tellingly no firearm was ever observed by the UC or other officers conducting surveillance." *Id*. at 5.

In his Renewed Motion, Defendant contends that "[a]t a pretrial hearing, defense learned that Officers attempted to corroborate" his alleged statement about going to shoot at gun ranges, but were unable to do so.[4] The UC did not testify at trial and the audio of the meeting between the UC and Defendant is hard to hear. Nonetheless, Defendant contends that a *Franks* hearing is required because of "the many uncorroborated statement to the UC and defense's assertions that other statements were made that were either not recorded or unintelligible." *Id*. Defendant provides no fact or argument attacking the veracity of the UC who was an LVMPD vice officer, not an anonymous tipster or paid informant.

Probable cause turns on the assessment of probabilities. *Gates*, 462 U.S. at 232. The standard of review of the issuing judicial officer's determination is whether he had a substantial basis for concluding that a search would uncover criminal activity. *Id*. at 236. Defendant picks two statements out of many reported by the undercover vice officer in an attempt to cast doubt on "the veracity of other claims he made to the UC." ECF No. 176 at 4. It is Defendant who must make a "substantial preliminary showing" that false statements were deliberately or recklessly included in the search warrant affidavit and material to the state judge's finding of probable cause to warrant a *Franks* hearing. *Napier*, 436 F.3d at 1139.

---

[4] Defendant also says he believes "officers tried to corroborate whether" he left the country, but could not do so. *Id*. at 4. However, Dinh's summary of the conversation between the UC and Defendant does not mention travel outside of the county. ECF No. 34-3 at 8-9. Defendant fails to cite where in Dinh's affidavit this representation was made and the Court did not locate any such reference. Thus, the Court does not discuss this assertion of belief further.

The Court finds Defendant's contentions fail to meet this standard as there is nothing to support the conclusion that Dinh's affidavit included deliberately false or reckless statements on which the state judge's determination was substantially based. The judge who was presented with the affidavit was able to consider all the information presented in the affidavit, including that Defendant was a convicted felon, something the judge—an individual familiar with the law—was entitled to consider when evaluating Defendant's statements regarding owning and always carrying a gun. In fact, the judge had before him Dinh's affidavit statements that Defendant "is prohibited from possessing firearms" and "is a prohibited person (convicted person) who cannot legally purchase or sell firearms." ECF No. 34-3 at 6, 15. Thus, Defendant's contention that statements attributed to him regarding ownership and use of firearms were materially misleading or false are simply unpersuasive.

Further, Dinh's affidavit does not state or intimate that the UC or anyone else ever saw Defendant in possession of a gun or that there was independent evidence demonstrating Defendant frequented any gun ranges. Instead, the information presented was solely what Defendant said to the undercover officer during their meeting at Grimaldi's. Suggesting that Dinh was required to affirmatively add that no gun was ever seen by law enforcement (except as reported in Dinh's representation regarding Defendant's Instagram post showing an "apparent" gun) is exactly what the Ninth Circuit cautions against; that is, neither "certainty nor a preponderance of the evidence is required to make a probable cause finding. *Kelley,* 482 F.3d at 1050. *See also Ventresca*, 380 U.S. at 108 (making clear that "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.").

Finally, the Court notes that even if what Dinh included in his affidavit had come from an informant, rather than an undercover officer, corroboration was not required. *United States v. Sofra-Weiss*, Crim. No. 13-00573 SOM, 2014 WL 3672499, at *2 (D. Haw. July, 22, 2014) ("corroboration of an informant's information certainly bolsters a court's reliance on it when the court is examining a warrant application for probable cause, corroboration is not strictly required before a judge credits information.").

The judge, using his common sense and legal training, was empowered to determine whether the totality of the information presented was sufficient to establish probable cause. Federal courts "have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *United States v. Binford*, Case No. 1:20-cr-00150-ADA-BAM-1, 2023 WL 5628764, at *8 (9th Cir. Aug. 31, 2023) *quoting Gates*, 462 U.S. at 236. The Court will not invalidate the warrant by interpreting Dinh's affidavit in a "hypertechnical, rather than a common-sense manner." *Gates*, 462 U.S. at 236. The issuing judge was "entitled to rely on the training and experience of police officers" when evaluating whether a warrant affidavit establishes probable cause. *United States v. Parks*, 285 F.3d 1133, 1142 (9th Cir. 2002) (quoting *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995). Even if a borderline case, "preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Martinez*, 588, F.2d 1227, 1234 (9th Cir. 1978) (internal citation omitted). Defendant's presentation fails to make a substantial preliminary showing that there was either a material omission or affirmative misrepresentation regarding Defendant's ownership or use of firearms. No *Franks* hearing is required under these circumstances.

*4. The Hitching Rail Address as Defendant's Residence.*

Defendant contends the Court reached an erroneous result when it denied his original Motion to Suppress based on alleged materially misrepresented facts. ECF No. 176 at 6. Defendant points to four facts for the Court's review. These four facts include: (1) the administrative subpoena issued a year prior to the warrant; (2) the surveillance of the Hitching Rail address; (3) Dinh's experience in vice; and (4) the photograph Defendant posted to his Instagram account tagging the Hitching Rail residence as "home."

The subpoena request relates to Defendant's contention that his driver's license showed an address on Cimmaron Ridge as his supposed residence, which, as argued by Defendant in his original Motion, "significantly undermines the nexus between the alleged crime and" Hitching Rail as his residence.[5] ECF No. 34 at 9. This is not new information. Defendant points to the fact that the

---

[5] Defendant's focus on alleged misrepresentations regarding the Hitching Rail address seems misplaced given his assertion that, at a minimum, he was an overnight guest at the location and, therefore, had a Fourth Amendment expectation of privacy providing standing to challenge the search warrant for this home. ECF No. 182 at 4-5.

driver's license was issued in September 2022, and the search warrant was issued in August 2023. Defendant admits, however, that a June 2022 administrative subpoena shows Defendant "did not hold utilities in his name" at Cimmaron Ridge.[6] ECF No. 176 at 6.

Nonetheless, Defendant argues Dinh admitted at trial that in August 2023, when he authored the affidavit, he knew of the Cimmaron Ridge address, did not know if Defendant lived there, but determined the address was an old one. *Id.* at 7. However, Dinh also testified that addresses on drivers' licenses are not always accurate because people move all the time (ECF No. 163 at 214), and that he did not believe Defendant lived at the Cimarron address "because he had … nothing … to corroborate that he lived there [and] … an address alone doesn't say that he lived there." *Id.* at 256. Defendant further fails to cite Dinh's testimony that when he investigated Defendant he "ran him through different databases … [trying to] determin[e] … whether or not he had an actual address," but found none associated with Defendant. *Id.* at 137. And, based on the surveillance (discussed in more detail below) Dinh found Defendant driving a car belonging to Jalaani Thompson ("Thompson") and arriving and leaving from the Hitching Rail address at which Thompson had utilities in her name. *Id*. at 137-138. Dinh also testified that a car associated with Defendant—a Blue Range Rover—that did not have a license plate (no "tags"), was observed at the Hitching Rail address. *Id*. at 215.

Defendant contends that "[a]t minimum, the possibility that … [Defendant] resided at Cimmaron Ridge should have been brought to the warrant-issuing judge's attention …." ECF No. 176 at 7. Defendant takes exception to the surveillance done as Hitching Rail and the Court's finding that "defendant came and went from [the Hitching Rail] … address over three days not appearing to need another individual" to enter the home and having left from this address to meet the UC at Grimaldi's. *Id*. *citing* ECF No. 49 at 13, 14. Pointing to information gleaned at trial, Defendant says the surveillance conducted was insufficient to support a finding that he was "coming and going" from the Hitching Rail address.

---

[6] Defendant argues the June 2022 administrative subpoena evidenced not only that Defendant had no utilities at the Cimmaron Ridge address, but showed a third address for Defendant at Adamhurst Ave. ECF No. 176 at 7. Defendant concludes this "militates against probable cause … [and] should have been added to the warrant." *Id*.

There is no dispute that the UC and Defendant exchanged messages on August 19, 2023 and agreed to meet at Grimaldi's. ECF No. 34-3 at 7. The Court further reviewed the transcripts from days 1 and 2 of the trial on which Defendant relies (ECF Nos. 162, 163) and confirmed the following. The meeting took place at Grimaldi's where several law enforcement officers were stationed to surveille the meeting at least in part to ensure the UC's safety. ECF No. 163 at 28. The officers saw Defendant arrive in a white Mercedes and leave in the same car. ECF Nos. 162 at 183; 163 at 8, 23, 25, 28, 136, 216. Dinh researched the owner of the white Mercedes on August 24 and found it was registered to Thompson who had utilities in her name at Hitching Rail. ECF No. 163 at 93, 105-06, 136-37, 216.

In addition, the trial testimony establishes that: (1) upon arriving at Grimaldi's on August 23, 2023, in the white Mercedes, Defendant met with the UC; (2) after his meeting with the UC was over, Defendant left in the same Mercedes he arrived in; (3) the white Mercedes was observed in the driveway of the Hitching Rail address on August 27; (4) Defendant pulled into the driveway of Hitching Rail and exited the white Mercedes on August 28, 2023; (5) Defendant was alone when he arrived at Hitching Rail on August 28th; (6) without pausing, Defendant entered the Hitching Rail residence through the front door on August 28th; and (7) on August 29, 2023, Defendant left the Hitching Rail address through the front door, got into the white Mercedes, drove away and was arrested. *Id*. 28, 32-33, 116, 136, 137-39, 216. The Court found no testimony that anyone else was seen coming or going from Hitching Rail during the time Dinh surveilled the home, and no one else was seen coming or going from the Hitching Rail once Defendant left on August 29th and during the execution of the search warrant on August 29. *Id*. at 94.

Moreover, Dinh's testimony establishes that Dinh first saw Defendant at Grimaldi's on August 23 arriving and leaving in the white Mercedes; next saw the white Mercedes on August 27 in Thompson's driveway while surveilling the house at night for approximately 15 or 20 minutes; then Dinh saw Defendant on August 28th while surveilling Hitching Rail for approximately 30 minutes during which time he saw no one else come or go from the house; and on the 29th at approximately 11 in the morning Dinh observed Defendant leave the house through the front door. *Id*. at 222-227. While Defendant was originally associated with a Blue Range Rover parked in the

garage at the Hitching Rail residence, it was not further investigated because it had no license plate. *Id*. at 215.

Again, Defendant challenges the Court's prior recommendation and Order denying his original Motion to Suppress averring the findings are "based on the misrepresented surveillance." ECF No. 176 at 9. Defendant argues that the Court's determination that it appeared Defendant did not need assistance to enter the Hitching Rail house is flawed as Dinh could not see whether Defendant knocked or used a key. *Id*. Defendant submits there was error as Dinh does not know how long he surveilled Hitching Rail on August 29, and Dinh did not see Defendant checking mail or taking out garbage. *Id*. at 9-10. Defendant concludes that, "[f]or these reasons, the warrant materially misrepresented the scope of the surveillance." *Id*. at 10. After stating this conclusion, Defendant admits he posted a photograph to his Instagram account tagging Hitching Rail as "home" in July 2023.[7] *Id*. Defendant says, "[e]ven considering this post, there is still insufficient connection to Hitching Rail[] to support the warrant due to the lack of surveillance and other possible residences" known but not disclosed to the judge. *Id*.

Dinh's affidavit provided the state judge with the following facts:

- A records check on Thompson showed she was associated with the Hitching Rail house and maintained utilities at that address;
- Dinh's training and experience teaches him that "individuals typically operating within the criminal underworld … will avoid putting their name on paperwork to avoid law enforcement detection";
- Defendant posted a picture of the Hitching Rail backyard tagging it as "home" (pictures provided to the judge);
- On August 17, 2023 Dinh surveilled the house and "observed the white 4-door Mercedes [i]n the driveway" (no representation of the length of the surveillance was stated);
- This Mercedes is the same Mercedes seen when Defendant met the UC;
- On August 28, 2023, Dinh saw Defendant pull into the Hitching Rail driveway, get out of the car and enter the Hitching Rail house through the front door, but a bush blocked his view and "it was undetermined if he used a key to enter" (no length of surveillance was provided); and,

---

[7] While Defendant first argued the post did not exist, Defendant discovered its error and withdraw that accusation in its Reply. ECF No. 182 at 3.

- On August 29, 2023, at approximately 11:20 a.m., Dinh saw Defendant leave the Hitching Rail residence, get into the Mercedes, and was then stopped by LVMPD.

ECF No. 34-3 at 10-14.

The Court rejects Defendant's contention that the Court mischaracterized this evidence. The Court finds there is no evidence offered to substantiate an affirmative misrepresentation by Dinh regarding Defendant's association with Hitching Rail. The question is only whether there was a material omission when Dinh's affidavit failed to inform the state judge, in August 2023, that Defendant had a driver's license issued in September 2022 displaying the Cimmaron address and that a June 2022 NV Energy subpoena return showed the same address, but no utilities subscribed in his name. Defendant also points to Dinh's testimony that he knew about the driver's license and Cimmaron Ridge address, determined it was an "old address," and could not explain why he believed that to be true. ECF No. 176 at 6-7.

The Court's finds Defendant mischaracterizes the totality of the evidence and Dinh's testimony. Dinh testified that (1) he ran Defendant through various databases trying to find an address actually associated with Defendant but found none (ECF No. 163 at 137), and (2) an address on a driver's license is not "alone" sufficient to establish where someone lives as people move all the time (*id* at 256). The evidence available to the Court at the time the original recommendation was adopted by the District Judge shows the subpoena return confirmed electric power to the Cimmaron Ridge address was subscribed to by another individual (ECF No. 39-5), and there was nothing in 2023 or now that ties Defendant to the Adamhurst address.

The totality of the evidence fails to demonstrate that either the failure to mention the Adamhurst address or Defendant's potential association with Cimmaron Ridge supports the conclusion that Dinh had a high degree of awareness that any statement appearing in his affidavit was false, let alone probably false. There is no direct evidence, nor reasonable inference, that Dinh had a subjective intent to deceive the state judge regarding Hitching Rail. Indeed, the Court finds the representations regarding Hitching Rail are accurate.

"The key to the material omission prong is whether probable cause remains once any omissions are supplemented. … If probable cause remains, the defendant has failed to establish a material omission." *United States v. Moreno*, Case No. 4:22-cr-00027-DCN-1, 2023 WL 121083,

at *5 (D. Idaho Jan. 6, 2023) (internal quote marks and citation omitted). After all of the above is considered, the Court finds no omission cited by Defendant rises to the level of being material to the finding of probable cause. Nothing that was recklessly or intentionally misleading.

To reach the opposite conclusion as argued by Defendant would necessarily require the Court to find the state judge rejected the evidence from August 2023 including, but not limited to, Defendant tagging Hitching Rail as his home just one month before his interaction with the UC, Defendant's meeting with and representation to the UC at Grimaldi's on August 23rd, and his coming and going from the Hitching Rail address within days of meeting with the UC where he spoke about the UC joining his stable. ECF No. 34-3 at 13. Inclusion of the information from June and September 2022, including a returned subpoena associating Defendant with the Cimmaron Ridge address at which power was under someone else's name, and a driver's license at that address, would not have altered the finding of probable cause to conclude there was a fair probability that evidence of Defendant's alleged criminal behavior would be found at the Hitching Rail address he tagged as "home" in an Instagram post in July 2023. ECF No. 34-3 at 13.

Once again, the state judge was entitled to rely on the totality of the evidence regarding Defendant's appearance at and use of the Mercedes associated with Hitching Rail, his tagging the address as home, and Detective Dinh's expertise and experience when he considered whether probable cause existed to search the residence. *United States v. Martinez*, 811 Fed.Appx. 396, 399 (9th Cir. 2020).

*5. A Franks Hearing is not required.*

The Court finds no *Franks* hearing is needed or required. As previously stated, Defendant's attempt to parse each piece of information discussed in Dinh's affidavit, and now adding the testimony provided at trial, does not defeat the conclusion that the totality of facts presented were sufficient to allow the state judge to draw reasonable information and conclude there was probable cause to search the Hitching Rail home for evidence of crimes committed by Defendant. *United States v. Dow*, Case No. 22-10200, 2023 WL 5992743, at *1 (9th Cir. Sept. 15, 2023) *citing Blight v. City of Manteca*, 944 F.3d 1061, 1066-67 (9th Cir. 2019) and *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006).

## III. Conclusion and Recommendation

The Court finds there is neither the omission nor commission of material information that undermines the Hitching Rail warrant. The totality of the circumstances demonstrates "there is a fair probability that contraband or evidence of a crime" would be found at Hitching Rail. Neither the omission of the alternative addresses identified nor the inclusion of the 2019 conviction that was dismissed alters this finding. The Court finds that even if the contents of the affidavit was amended as Defendant seeks, probable cause remains. There is also no evidence Detective Dinh intended to mislead the state court.

Finally, given Defendant depends entirely on a finding that the Hitching Rail warrant was issued without probable cause to argue information obtained from the iPhones and Instagram warrants must be suppressed (ECF No. 176 at 2, 16), the Court finds this argument also fails.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's Renewed Motion to Suppress (ECF No. 176) be DENIED.

Dated this 21st day of July, 2026.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Under Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court holds that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit also holds that (1) failure to file objections within the specified time, and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).